UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATOYA ANTHONY,

                      Plaintiff,        Civil Action No. 18-12349
                                           Honorable Terrence G. Berg
v.                                           Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]**

Plaintiff Latoya Anthony ("Anthony") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #10, 11), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Anthony is not

disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #11**) be **GRANTED**, Anthony's Motion for Summary Judgment (**Doc. #10**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II. REPORT**

**A. Background**

Anthony was 37 years old at the time of her alleged onset date of December 27, 2015, and at 5'2" tall weighed approximately 160 pounds during the relevant time period. (Tr. 221, 225). She completed high school and one year of college; she also earned her certification as a nursing assistant ("CNA"). (Tr. 39-40, 226). She worked as a CNA until November 30, 2015, when she pulled a muscle in her back while pregnant and could no longer perform the duties of her job. (Tr. 45-46, 225-26). While she was on this "maternity leave," she suffered a brain aneurysm. (Tr. 46). She now alleges disability primarily as a result of the lasting effects of this aneurysm (including headaches and a cognitive disorder), as well as fibromyalgia, carpal tunnel syndrome, back pain, and depression. (Tr. 48-49, 225).

After Anthony's applications for DIB and SSI were denied at the initial level on July 23, 2016 (Tr. 88-103), she timely requested an administrative hearing, which was held on December 13, 2017, before ALJ Elias Xenos (Tr. 35-59). Anthony, who was represented by attorney Vicki Corr, testified at the hearing, as did

vocational expert Don Harrison. (*Id.*). On March 23, 2018, the ALJ issued a written decision finding that Anthony is not disabled under the Act. (Tr. 16-31). On July 9, 2018, the Appeals Council denied review. (Tr. 1-5). Anthony timely filed for judicial review of the final decision on July 27, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Anthony's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

3

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Anthony is not disabled under the Act. At Step One, the ALJ found that Anthony has not engaged in substantial gainful activity since December 27, 2015 (the alleged onset date). (Tr. 18). At Step Two, the ALJ found that she has the severe impairments of status post intracranial aneurysm/cerebral trauma, shallow disc osteophyte complex

4

in the cervical spine, fibromyalgia, bilateral carpal tunnel syndrome, headaches, hypertension, depression, and a cognitive disorder. (*Id.*). At Step Three, the ALJ found that Anthony's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 19).

The ALJ then assessed Anthony's residual functional capacity, concluding that she is capable of performing sedentary work, with the following additional limitations: can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can never balance; can frequently stoop, crouch, crawl, and kneel; can frequently handle and finger bilaterally; can never work around unprotected heights or hazardous machinery; is limited to simple, routine, and repetitive tasks, in a work environment that is free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any, workplace changes; is limited to occupations that do not require complex written or verbal communication; and must be permitted to alternate between sitting and standing every 20 minutes. (Tr. 22).

At Step Four, the ALJ found that Anthony is not capable of performing any of her past relevant work. (Tr. 29). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Anthony is capable of performing the jobs of bench assembler (30,000 jobs nationally), hand packer (35,000 jobs), and optical inspector (35,000

jobs). (Tr. 30). As a result, the ALJ concluded that Anthony is not disabled under the Act. (Tr. 31).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D. Analysis**

As set forth above, the ALJ concluded, in relevant part, that Anthony has the severe impairments of depression and a cognitive disorder.[1] (Tr. 18). The ALJ then found, at Step Three of the sequential analysis, that these impairments do not meet or medically equal listing 12.02 (neurocognitive disorders) or 12.04 (depressive, bipolar, and related disorders). (Tr. 19). In her motion for summary judgment,

---

[1] The ALJ also found that Anthony's status post intracranial aneurysm/cerebral trauma is a severe impairment. (Tr. 18). This impairment is discussed in greater deal, *infra* at footnote 2.

7

Anthony argues that the ALJ erred in finding that she "does not meet the requirements of Paragraph B" of these listings.[2] (Doc. #10 at 7). For the reasons set forth below, although the record contains some evidence favorable to Anthony, ultimately, because substantial evidence supports the ALJ's decision, that decision should be affirmed.

### 1. The Paragraph B Criteria

Listings 12.02 and 12.04 set out the same four paragraph B criteria, which relate to the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02B, 12.04B. In order to meet listing 12.02B or 12.04B, Anthony must prove that she has either an extreme limitation in one of these areas, or marked limitations in at least two areas. Here, however, Anthony does not challenge the ALJ's finding that she has only a mild limitation in the ability to adapt or manage herself, nor does she suggest that she has an extreme limitation in any of

---

[2] In her motion, Anthony does not specifically identify which severe impairments she believes satisfy which listings. (Doc. #10 at 7-9). Although she mentions both her brain aneurysm and her mental health treatment, she refers to the paragraph B criteria generically. This is problematic because the paragraph B criteria play a role in both the neurological listings that would potentially apply to her status post brain aneurysm (*e.g.*, 11.04, 11.17, 11.18) and the mental health listings (*e.g.*, 12.02, 12.04). To meet one of the relevant neurological listings (11.04, 11.17, or 11.18), however, Anthony must prove that she has a marked limitation in *physical functioning*, as well as in one of the areas of mental functioning discussed herein. Because Anthony does not argue that her impairments cause a marked limitation in physical functioning, her paragraph B argument is necessarily limited to her mental impairments and, therefore, listings 12.02 and 12.04.

8

the four functional areas. (Doc. #10 at 7-9). Thus, to prevail on her claim of error, Anthony must establish that she has marked limitations – i.e., is "seriously limited" in her ability to function "independently, appropriately, effectively, and on a sustained basis" – in at least two of the three remaining paragraph B areas (understanding, remembering, or applying information; interacting with others; or concentration, persistence, or maintaining pace). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F(2)(d). Each of these areas is discussed below.

### 2. *Understanding, Remembering, or Applying Information*

Pursuant to the applicable regulation:

> This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E(1). In determining that Anthony has only mild limitations in this area, the ALJ specifically noted that she was able to get one son up and ready for school, and that she was able to care for her one-year-old child. (Tr. 21, 233).

In arguing that the ALJ erred in finding that she has only mild limitations in understanding, remembering, or applying information, Anthony first points to her

9

own subjective complaints of memory problems. (Doc. #10 at 7-8). For example, Anthony cites her testimony that "she burns things on the stove, forgets to take her medication or that she has taken it, [and] takes the wrong meaning from what people say." (*Id.* (citing Tr. 48)). But, the ALJ specifically acknowledged Anthony's allegations that she "needs reminders to take care of personal needs" and to "take medication on time"; that she has forgotten food when cooking and burned it; that she cannot help her son with his math homework; and that she has difficulty counting money; and then, as discussed below, reasonably weighed it against other evidence in the record. (Tr. 21, 48, 232, 234). Thus, the ALJ considered and discussed the very evidence on which Anthony relies, and her mere disagreement with the ALJ's weighing of that evidence does not warrant remand. *See Webb v. Comm'r of Soc. Sec.*, No. 16-10015, 2017 WL 1164708, at *8 (E.D. Mich. Mar. 29, 2017) ("Such an argument asks this Court to reweigh the evidence in her favor, a task which it is not permitted to undertake.").

Anthony also argues that the ALJ erred in overlooking the memory difficulties she displayed during her consultative examination with Rownak Hasan, M.D. (Doc. #10 at 7). Specifically, Anthony points out that, during this examination, she was "not able to repeat digits backwards, unable to remember any items after 3 minutes, she was not able to remember the presidents, did not know any famous people, unable to do even simple math calculations and no abstract thinking." (*Id.* (citing

10

Tr. 453)). Again, however, the ALJ discussed these findings (as well as others which indicate at least some level of impairment), noting that, nevertheless, Dr. Hasan opined that Anthony was "intact with reality" and capable of understanding simple instructions. (Tr. 26, 29, 454). The ALJ assigned Dr. Hasan's opinion significant weight (Tr. 29), and found it is consistent with the ability to "follow[] one- or two-step oral instructions to carry out a task," which is one aspect of understanding, remembering, or applying information. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E(1).

Lastly, Anthony asserts in passing that her "medical records consistently show that [she] has memory loss." (Doc. #10 at 8 (citing Tr. 433, 439, 456, 463, 480)). In truth, however, while one of the records cited by Anthony arguably contains a medical judgment that she is "cognitively impaired" – albeit perhaps temporarily – in the area of memory (Tr. 456), the other records she relies on merely set forth her own subjective complaints (Tr. 433 ("[a]dmits memory loss"), 439 (complained of memory loss), 480 (complained of memory difficulties)). Moreover, other medical records indicate that Anthony's memory is within normal limits. For example, the ALJ noted that in April and July of 2017, Anthony's memory was found to be "grossly within normal limits" and "roughly within normal limits." (Tr. 27, 474, 477). The ALJ also noted that during the July 2017 appointment, Anthony reported being "fine," with no major issues. (Tr. 27, 476). Findings from a separate

11

appointment with a different provider from around the same time similarly indicate, "good judgement [sic]," orientation to time, place and person, and "normal" recent memory. (Tr. 462). Similarly, other mental status exams routinely reflect Anthony's intact fund of knowledge (*e.g.*, "patient is adequate historian"), average intelligence, fair judgment, and good insight. (Tr. 456, 486, 487, 494, 504, 512, 521).[3] The ALJ also appropriately noted that Anthony "was able to answer questions during the hearing." (Tr. 28). All of these findings are consistent with the ability to "us[e] reason and judgment to make work-related decisions." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E(1).

In summary, in arguing that she has a marked limitation in understanding, remembering, or applying information, Anthony primarily points to evidence the ALJ fully considered, such as the memory difficulties she displayed during the consultative examination and her own subjective complaints, and impermissibly asks the Court not only to give that evidence greater weight than the ALJ gave it,

---

[3] Later in the decision, the ALJ also noted that Anthony "did well postoperatively and did not have significant neurologic deficit post procedure," appropriately citing record evidence. (Tr. 24 (citing Tr. 301 (noting that Anthony "did well postoperatively and did not have significant neurologic deficit post procedure"), 310 (noting Anthony was oriented, coherent, and "appropriate," with clear speech), 314 (findings "within normal limits")). He also noted that "hospital records do not reveal objective examinations or findings of cognition deficits, referrals for therapy or rehabilitation of any kind." (Tr. 24). Some of the cited records contain notes like, "Patient doing well this morning . . . headache is improved with tylenol" (Tr. 390-91), and "[s]he underwent uneventful surgery and recovered well. . . . had no complaints . . ." (Tr. 397). In another record cited by the ALJ, Anthony's doctor found her to be "neurologically intact" (Tr. 436-37), and in another noted that he was "pleased with [Anthony's] outcome after surgery," instructing her to simply follow up three months later (Tr. 440).

but also to re-weigh it against the other evidence cited by the ALJ. (Doc. #10 at 7-8). As the Sixth Circuit Court of Appeals explained in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011), "[t]his court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Moreover, an ALJ's decision cannot be reversed "merely because there exists some other evidence in the record that might support a different conclusion." *Williams v. Comm'r of Soc. Sec.*, No. 16-14065, 2018 WL 1322396, at *10 (E.D. Mich. Feb. 26, 2018). Indeed, as noted above, if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (internal citation omitted). Thus, where there is substantial evidence supporting the ALJ's finding that Anthony has only mild limitations in understanding, remembering, or applying information, she has not identified any error warranting remand.

       3.    *Interacting with Others*

Pursuant to the applicable regulation:

> This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional);

13

> responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E(2). In determining that Anthony has moderate limitations in this area, the ALJ noted her allegations of mood swings and difficulty getting along with family, friends, and neighbors. (Tr. 21, 49, 237, 452). But, the ALJ also pointed out that Anthony spends time with others, including talking, eating, and cuddling with her boyfriend and children daily. (Tr. 21, 236). The ALJ also noted that Anthony was never fired or laid off from a job because of problems getting along with other people. (Tr. 21, 238).

In arguing that the ALJ erred in finding that she is moderately limited in interacting with others, Anthony's only challenge is to the ALJ's observation that she has never been fired from a job because of social interaction concerns. (Doc. #10 at 8). Specifically, Anthony contends that her brain aneurysm "changed who she was"; she claims she worked until shortly before she suffered the aneurysm, was planning to return to work after the birth of her child, and "would like to return even now, but can't because of her change in disposition." (*Id.*). While Anthony raises a valid point that her successful employment tenure preceded her brain aneurysm, the problem is that even assuming Anthony now has a harder time interacting with others, there is substantial evidence in the record supporting the ALJ's finding that she still is no more than moderately limited in this area. For example, state agency

14

psychological consultant, Michele Leno, Ph.D., who reviewed Anthony's medical records – including evidence regarding her aneurysm and ensuing treatment – concluded that Anthony is only moderately limited in her ability to interact with the general public and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes (and is not significantly limited in the ability to ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior). (Tr. 70). This opinion evidence, along with the ALJ's observation that Anthony spends time with others daily, in various capacities, provides substantial support for the ALJ's finding that she has no more than moderate limitations in interacting with others.[4]

### 4. *Concentrating, Persisting, or Maintaining Pace*

Pursuant to the applicable regulation:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a

---

[4] This is especially true where the ALJ expressly discounted Anthony's subjective complaints (Tr. 24), and Anthony does not challenge that finding.

15

> full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E(3). In determining that Anthony has moderate limitations in this area, the ALJ cited Anthony's own reports that she can pay attention for 10-30 minutes at a time, and that she is able to drive (though she sometimes opts not to do so for reasons unrelated to her ability to concentrate). (Tr. 21, 28, 58, 237). Findings in numerous medical records similarly indicate that Anthony displayed normal "attention" and "concentration abilities." (Tr. 486, 494, 499). The ALJ also noted that Anthony is able to maintain a routine in the sense that she gets her son ready for school and takes care of an infant on a daily basis. (Tr. 28, 233). And, here too, Dr. Leno's opinion is consistent with the ALJ's finding, as she concluded that Anthony would have no more than moderate limitations in the functional demands relevant to this criterion.[5] (Tr. 69-70).

In arguing that the ALJ erred in finding that she has only moderate limitations in concentrating, persisting, or maintaining pace, Anthony merely references the arguments she previously made concerning the other paragraph B criteria. (Doc. #10 at 8-9). As set forth above, however, the ALJ thoroughly considered Anthony's subjective complaints, Dr. Hasan's report, and Dr. Leno's findings, as well as the other evidence of record, and Anthony has not identified any error in the ALJ's

---

[5] In fact, Dr. Leno found that Anthony's abilities to carry out short and simple instructions, sustain an ordinary routine, and make simple work-related decisions were not significantly limited. (Tr. 69-70).

16

analysis. And, where substantial evidence supports the ALJ's evaluation of the paragraph B criteria, Anthony cannot achieve a remand simply by pointing to evidence that arguably supports a contrary finding. *See Williams*, 2018 WL 1322396, at *10; *Cutlip*, 25 F.3d at 286; *Quisenberry v. Comm'r of Soc. Sec.*, No. 17-2408, 2018 WL 6264566, at *11 (6th Cir. 2018) ("Were we left to our own devices, we likely would have concluded that substantial evidence in the administrative record establishes [claimant's] entitlement to Social Security disability benefits …. Nevertheless, substantial evidence in the record also supports the conclusion reached by the administrative law judge that [claimant] is not disabled for Social Security purposes. In light of well-established caselaw directing our decisional process in such a situation, we thus AFFIRM the judgment of the district court."). This is particularly true where, as here, Anthony bears the burden of proving that she satisfies the paragraph B criteria and, thus, meets a listing. *See, e.g., Fox v. Comm'r of Soc. Sec.*, No. 15-10968, 2016 WL 6246386, at *7 (E.D. Mich. Jan. 5, 2016).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the

Commissioner's Motion for Summary Judgment (**Doc. #11**) be **GRANTED**, Anthony's Motion for Summary Judgment (**Doc. #10**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: January 11, 2019
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 11, 2019.

                                                     s/Eddrey O. Butts
                                                     EDDREY O. BUTTS
                                                     Case Manager